93 F.3d 540
 51 Soc.Sec.Rep.Ser. 443, Unempl.Ins.Rep. (CCH) P 15517B,
96 Cal. Daily Op. Serv. 5959,
96 Daily Journal D.A.R. 9763
Giuseppe MACRI, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
* Defendant-Appellee.
 No. 95-15111.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1996.
Memorandum July 9, 1996.
Order and Opinion Aug. 9, 1996.
 
 Harvey P. Sackett, San Jose, California, for plaintiff-appellant.
 Michael R. Power, Assistant Regional Counsel, Social Security Administration, San Francisco, California, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California, Spencer M. Williams, Senior District Judge, Presiding. D.C. No. CV-93-20857-SW.
 Before: SNEED, NORRIS, and WIGGINS, Circuit Judges.
 
 
 1
 Opinion by Judge SNEED; Dissent by Judge NORRIS.
 
 ORDER
 
 2
 The Memorandum disposition filed July 9, 1996, is redesignated as an authored Opinion by Judge Sneed.
 
 OPINION
 SNEED, Circuit Judge:
 
 3
 Giuseppe Macri appeals the district court's order and judgment affirming the Commissioner's decision to deny him disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401. We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 I.
 STANDARD OF REVIEW
 
 4
 We review de novo the district court's order upholding the Commissioner's denial of benefits. Flaten v. Secretary of Health & Human Serv., 44 F.3d 1453, 1457 (9th Cir.1995). We must affirm the denial of disability benefits if it is supported by substantial evidence and the Commissioner applied the correct legal standards. Id. "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. We may not substitute our judgment for that of the Commissioner. Id.
 
 II.
 MACRI'S ARGUMENTS
 
 5
 Macri makes numerous arguments in support of his contention that the district court erred in affirming the Commissioner's denial of disability insurance benefits. We shall address each such argument.
 
 A. Residual Functional Capacity
 
 6
 Macri contends that no substantial evidence exists to support the Commissioner's decision that Macri retained the residual functional capacity (RFC) to perform a wide range of light work prior to December 31, 1986, the expiration of his disability insured status. We disagree.[1]
 
 
 7
 The claimant has the burden of proving that he became disabled prior to the expiration of his disability insured status. Id. at 1463. The claimant must prove not only the existence of an impairment but that the impairment prevents him from performing his past work. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir.1993).
 
 
 8
 Here, in determining Macri's RFC, the administrative law judge (ALJ) relied upon specific observations made prior to December 31, 1986, by Macri's treating physician, Dr. Donald Prolo, a Board-certified neurosurgeon, and an examining physician, Dr. S. Malvern Dorinson. These observations support the ALJ's conclusion that Macri's back impairment did not prevent him from performing a wide range of light work prior to December 31, 1986. See 20 C.F.R. § 404.1567(b) (1995) (lifting no more than 20 pounds at a time and frequent lifting of objects weighing up to 10 pounds).
 
 
 9
 Dr. Prolo performed Macri's 1982 back surgery. Although Macri complained of pain in his back, knees, legs, neck, arms, and hands through March 1986, Dr. Prolo reported that he observed no significant abnormalities and that Macri had a solid fusion at the L4-5 disc. In June 1984, Dr. Prolo reported that Macri was disabled according to Category "D" of the California Guidelines for Work Capacity. In October 1986, Dr. Prolo reported that despite Macri's complaints of pain, motor examination revealed strength everywhere in his lower and upper limbs to be intact.
 
 
 10
 In November 1985, Dr. Dorinson, a Board-certified specialist in medicine and rehabilitation, reported that Macri was in Category "D" of the California Guidelines for Work Capacity.[2]
 
 
 11
 Category "D" represents a "Disability Precluding Heavy Lifting, Repeated Bending and Stooping" and "contemplates the individual has lost approximately half of his pre-injury capacity for lifting, bending and stooping." Glass v. Workers' Compensation Appeals Bd., 105 Cal.App.3d 297, 164 Cal.Rptr. 312, 315 n. 1 (1980). Although the California Guidelines for Work Capacity are not conclusive in a social security case, Desrosiers v. Secretary of Health & Human Serv., 846 F.2d 573, 576 (9th Cir.1988), the ALJ is entitled to draw inferences "logically flowing from the evidence," Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982).
 
 
 12
 Here, Macri had been lifting boxes up to 40 pounds prior to his injury, frequently lifting boxes up to 25 pounds, and had been bending constantly in his job as a tile setter. Under Category D, Macri could lift up to 20 pounds, lift 10 pounds frequently, and bend half the time. Accordingly, the weight of contemporaneous medical evidence supports the ALJ's decision that Macri was capable of performing light work. See 20 C.F.R. § 404.1567(b).[3]
 
 B. Treating Physician
 
 13
 Macri contends that the Commissioner erred by rejecting Dr. John W. Hanbery's opinion because the ALJ rejected Dr. Hanbery's reports without stating specific reasons and the Appeals Council failed to remand the matter to the ALJ based upon Dr. Hanbery's 1993 reports. We disagree.
 
 
 14
 The ALJ did discuss Dr. Hanbery's reports, which began in December 1987, including his opinion that Macri was precluded from performing heavy work and his recommendation that Macri find work in which he could change positions as needed. The ALJ also discussed Dr. Hanbery's report in March 1990 that Macri was limited to light work. Those opinions are consistent with the ALJ's determination that Macri was capable of performing "a wide range of light work."
 
 
 15
 Macri also contends that the Appeals Council erred by deciding that Dr. Hanbery's reports submitted after the ALJ issued his decision did not warrant a remand to the ALJ. We disagree because Dr. Hanbery's 1993 reports were issued after the Commissioner's decision, so they are less persuasive. See Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.1989). Thus, the Appeals Council did not err when it concluded that the ALJ's decision was not contradicted by the weight of the evidence. See Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir.1991)(en banc).
 
 C. Claimant's Pain Testimony
 
 16
 Macri contends that the Commissioner failed to substantiate the rejection of his subjective pain complaints. We disagree.
 
 
 17
 "Where objective medical findings establish the existence of medical impairment, but a claimant testifies that [he] experiences pain at a higher level, the [Commissioner] is free to disbelieve that testimony. The [Commissioner] must, however, make a specific and justifiable finding that the claimant's testimony is not credible." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.1989).
 
 
 18
 Here, the ALJ discounted Macri's pre-1987 pain testimony for the following reasons: Macri completed an electronics training course in 1984 and unsuccessfully sought work in the field; Macri's testimony regarding pain prior to 1987 was vague; and Macri was not taking pain medication as of October 1986. The record reflects that Macri could not find work in 1985 and 1986 because of a slowdown in the electronics industry; that Dr. Dorinson reported that Macri's pain was minimal to slight in November 1985; and that Dr. Prolo noted that Macri's strength in his lower and upper limbs was intact in October 1986. Because the ALJ stated specific reasons for rejecting Macri's subjective pain testimony which are supported by the record, the Commissioner did not err by rejecting Macri's subjective pain testimony. See Magallanes, 881 F.2d at 756.
 
 D. Combined Impact of Impairments
 
 19
 Macri contends that the Commissioner erred by failing to consider the combined impact of his back impairment and his depression. We disagree.
 
 
 20
 When a claimant suffers from multiple impairments, the Commissioner must consider their combined effect in determining whether the claimant is disabled. Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir.1988). The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status, however, is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam. See Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir.1984) (per curiam).
 
 
 21
 Here, none of Macri's applications for disability insurance benefits mentions any impairment other than his back injury. Macri relies upon two psychiatric reports from Dr. Robert J. Riopelle submitted after the ALJ issued his determination. Because Dr. Riopelle examined and diagnosed Macri's depression well after his injury and the expiration of his disability insured status, it affords little weight and is not reliable. See id.
 
 
 22
 Macri also relies upon Dr. Prolo's May 1987 report which notes that Macri had been prescribed Amitriptyline, an antidepressant. Macri provides no evidence, however, that this medication was prescribed prior to the expiration of his disability insured status. Because the record fails to offer sufficient evidence suggesting that Macri suffered from a combination of impairments, the Commissioner did not err by failing to do a multiple impairments analysis. See Bates, 894 F.2d at 1064.
 
 E. Medical-Vocational Guidelines
 
 23
 Macri contends that the Commissioner erred by applying the Medical-Vocational Guidelines (Grids) because of his non-exertional impairment and his inability to do the full range of "light work." We disagree.
 
 
 24
 Macri failed to offer evidence of a contemporaneous diagnosis of a mood disorder during the relevant time period. Because Macri has failed to establish the existence of a significant non-exertional impairment, the Commissioner correctly applied the Grids. See Desrosiers, 846 F.2d at 577 (mere allegation of non-exertional limitation does not automatically preclude use of the Grids).
 
 
 25
 AFFIRMED.
 
 
 26
 WILLIAM A. NORRIS, Circuit Judge, dissenting.
 
 
 27
 I dissent because the Administrative Law Judge ("ALJ") committed two legal errors that require remand.
 
 
 28
 * Macri contends that the ALJ's findings rejecting his subjective pain testimony failed to meet the standard set forth in Dodrill v. Shalala, 12 F.3d 915 (9th Cir.1993). In Dodrill, we stated that "[i]f there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings." Id. at 918 (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989)). Further, "[i]t's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Id.
 
 
 29
 Here the ALJ rejected Macri's subjective pain complaints without considering significant probative evidence and by relying on other evidence that was not probative. First, the ALJ considered only Macri's pain testimony given at the hearing and disregarded without comment significant probative evidence of pain contained in Macri's medical record. For example, on August 8, 1985, Dr. Prolo reported that Macri "cannot stand more than an hour," and that "[h]e has pain in his right arm and all fingers bilaterally, low back pain into the right thigh, especially in the right knee and right foot." [AR at 164]. On June 2, 1986, Macri's wife reported to Dr. Prolo that Macri stayed "in bed all the time because he felt so weak and so much in pain." [AR at 161]. On October 31, 1986, Dr. Prolo reported that Macri "had low back pain constantly, into both lower limbs" and that "[h]e was unable to sit." [AR at 161]. The ALJ's failure to comment on any of this evidence "leaves this court with a record insufficient for a meaningful appellate review." Burnett v. Bowen, 830 F.2d 731, 736 (7th Cir.1987). "[T]o ensure meaningful appellate review at least a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which evidence is presented to counter the agency's position." Id.
 
 
 30
 Second, the ALJ relied on the fact that Macri completed an electronics training course to discredit his subjective pain complaints. However, there is no logical nexus between the completion of an electronics course and an ability to perform light work, which includes lifting up to 20 pounds, frequently lifting up to 10 pounds, and "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10; see also 20 C.F.R. § 404.1567(b) (1995). Because the record contains no evidence about the physical demands of the electronics course, Macri's completion of the course says nothing about his ability to perform electronics assembly work for a full eight-hour workday, let alone his ability to perform light work generally. In fact, Dr. Hanbery reported in 1987 that Macri told him that he had attempted a job in this field but "after working there the first day realized that the amount of sitting that was required caused him to experience a marked increase in his low back pain. He tried the second day to report for that job but simply soon found that he could not do it...." [AR at 220].
 
 
 31
 In sum, the ALJ's findings do not support his rejection of Macri's subjective pain complaints. This error requires a remand because the pain reported by Macri, if believed, may require a finding that he is disabled. " 'A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy.' " Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984) (quoting Delgado v. Heckler, 722 F.2d 570, 574 (9th Cir.1983)) (reversing denial of benefits because ALJ's determination that claimant was able to perform light work was unsupported in light of pain evidence). Pain is a nonexertional limitation which is not included in the medical vocational guidelines. See Penny v. Sullivan, 2 F.3d 953, 958-59 (9th Cir.1993); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir.1985); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(d), (e) (1995). If Macri's subjective complaints of pain are credited, the Commissioner would need to call a vocational expert in order to carry her burden of showing that there are jobs in the national economy that Macri is capable of performing. See Penny, 2 F.3d at 959; Perminter, 765 F.2d at 872. This error requires a remand for reconsideration of Macri's subjective complaints of pain in light of the evidence in the medical record, and without reliance on Macri's completion of the electronics course.
 
 II
 
 32
 Macri contends that the ALJ committed a second error by rejecting the opinion of a treating physician without "mak[ing] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir.1994) (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985)). The ALJ rejected without explanation the 1987 opinion of Dr. Hanbery that Macri was restricted from "prolonged standing or sitting," and specifically, that "[t]he prolonged sitting required in electronic assembly work I think will preclude his entering into this type of employment." Appellant's Opening Br. at 6. The majority holds that the ALJ committed no error because "Dr. Hanbery first examined Macri on December 12, 1987," one year after Macri's disability insured status expired, and therefore Dr. Hanbery's "opinion regarding Macri's condition prior to December 31, 1986 need not be afforded any more deference than that given to a non-treating physician with respect to Macri's condition at that time." In support, the majority relies on Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir.1989).
 
 
 33
 However, Magallanes is not apposite because it concerned a retrospective opinion, in which the treating physician opined that the claimant had become disabled two years before the physician first saw her. See Magallanes, 881 F.2d at 754. Dr. Hanbery's 1987 opinion, in contrast, is not retrospective. It discusses Macri's condition only in 1987, when Dr. Hanbery began treating Macri, and does not purport to discuss any earlier period. Thus the question is not whether Dr. Hanbery's 1987 opinion must be afforded the deference given the opinion of a treating physician--it clearly must--but rather whether it is probative of Macri's condition in 1986.
 
 
 34
 On this record, Dr. Hanbery's 1987 opinion is highly probative of Macri's condition in 1986 because of the evidence that Macri's condition did not change between December 1986 and December 1987. Indeed, the Commissioner herself argues that Macri's condition did not worsen until 1988. Br. of Appellee at 14. Macri's doctors reported no changes from 1986 through the end of 1987: on October 31, 1986, Dr. Prolo observed no material change in Macri's condition; in May 1987, Dr. Prolo still reported no significant changes; in November 1987, Dr. Prolo again reported "no objective changes," and noted that Dr. Silcox apparently "cannot find any either." Br. of Appellee at 5-6.
 
 
 35
 Therefore, if the ALJ credited Dr. Hanbery's opinion that Macri's back condition in 1987 precluded prolonged sitting or standing, the ALJ would necessarily have to find that Macri's back condition was the same in 1986 because it did not change in the intervening time. The ALJ may, of course, reject Dr. Hanbery's opinion, but he may not do so "without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). In sum, the ALJ erred by rejecting Dr. Hanbery's opinion without providing reasons.
 
 
 36
 Accordingly, the case must be remanded for consideration of the subjective complaints of pain contained in Macri's medical record and Dr. Hanbery's 1987 opinion.
 
 
 
 *
 Pursuant to Public Law No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, this opinion refers to the defendant as "the Commissioner" for the sake of convenience
 
 
 [1]
 Whether or not Macri's November 7, 1985, or May 21, 1986, benefit applications are reopened, substantial evidence supports the ALJ's determination of non-disability
 
 
 [2]
 Drs. Harmon, Butcher, Trigiano and Musladin reached the same conclusion
 
 
 [3]
 In an argument not raised before the district court or the Commissioner, Macri asserts that the Commissioner erred by failing to take account of Dr. Prolo's August 18, 1988 assessment that Macri was completely disabled. We do not consider arguments raised for the first time on appeal. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992)