119 F.3d 5
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Annie M. CLEGG, Plaintiff-Appellant,
v.
John J. CALLAHAN, Acting Commissioner of Social Security
Administration, Defendant-Appellee.
 No. 96-55589.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 11, 1997**
July 18, 1997.
 
 1
 Appeal from the Decision of the United States District Court for the Central District of California, D.C. No. CV 94-7934-SVM (RMC); Stephen V. Wilson, District Judge, Presiding.
 
 
 2
 Before: CANBY and THOMAS, Circuit Judges, and KING,*** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Annie M. Clegg challenges the Commissioner of Social Security Administration's denial of disability benefits and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382. Specifically, Clegg contends that: (1) the Administrative Law Judge ("ALJ") erred in applying the Medical Vocational Guidelines because Clegg has disabling nonexertional impairments of chronic severe pain, anxiety, and depression; (2) the ALJ erred in evaluating Clegg's subjective complaints of pain; (3) the ALJ erred in disregarding the opinion of Clegg's treating chiropractor; (4) the ALJ did not fully and fairly develop the record regarding Clegg's depression and mental condition; (5) the ALJ erred in determining whether Clegg's condition "equaled" the listing of impairments; and (6) the ALJ erred in determining Clegg's Residual Functional Capacity in finding that Clegg is capable of performing light work. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405. Because the Commissioner's findings are supported by substantial evidence, we affirm.
 
 BACKGROUND
 
 5
 Clegg was born on April 24, 1943; she was 49 when she filed her application for disability benefits. Clegg attended high school, but did not graduate. She was employed as a belt sander operator for eighteen years, until January 3, 1992, when she slipped and fell at work. Clegg brought claims for disability and SSI for knee and back pain and depression on October 14, 1992 and July 20, 1993, under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382, respectively. Her applications were denied initially and upon reconsideration. Clegg requested an administrative hearing which took place on April 14, 1994. ALJ William B. Churchill found Clegg not to be disabled. Clegg then sought review by the Appeals Council, which declined the request on September 28, 1994. On November 23, 1994, Clegg filed a complaint with the district court, seeking further review. On June 16, 1995, both parties filed cross-motions for summary judgment. The matter was referred to Magistrate Judge Rosalynn Chapman, who recommended that the court affirm the Commissioner's denial of benefits. on March 20, 1996, District Judge Stephen V. Wilson adopted the Magistrate Judge's Report and Recommendation. Clegg then timely filed this appeal.
 
 STANDARD OF REVIEW
 
 6
 A district court's grant of summary judgment is reviewed de novo. Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.1989). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Therefore, the scope of our review is limited; we may set aside a denial of benefits only if it is unsupported by substantial evidence or based on legal error. Flaten v. Secretary of Health & Human Serv., 44 F.3d 1453, 1457 (9th Cir.1995). "Substantial evidence" is something "more than a scintilla but less than a preponderance." Smolen v. Chater, 80 F.2d 1273, 1279 (9th Cir.1996) (citations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). We must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Id. (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985)). Finally, the harmless error rule applies. Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990).
 
 DISCUSSION
 A. Application of Grids
 
 7
 Clegg argues that the ALJ improperly applied Rule 202.11 of the Medical Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, because Clegg has disabling nonexertional impairments of chronic severe pain, anxiety, and depression. It is inappropriate to use the Grids where a claimant's nonexertional limitations significantly limit the claimant's range of work. Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.1988). The Grids may, however, be used to find a claimant not disabled if the ALJ finds that claimant's nonexertional limitations do not significantly affect her exertional capabilities. Macri v. Chater, 93 F.3d 540, 545 (9th Cir.1996) (citation omitted); Bates, 894 F.2d at 1063 (citing Razey v. Heckler, 785 F.2d 1426, 1430, modified, 794 F.2d 1348 (9th Cir.1986)).
 
 
 8
 Here, the ALJ found that the evidence failed to establish the existence of a nonexertional, psychiatric impairment that has imposed anything other than mild, short-term limitations on the claimant's capacity to carry out work-related activities. Clegg was examined by psychiatrist Dr. Shiro in 1992, in connection with her worker's compensation claim. Dr. Shiro administered the Beck Depression Inventory, Occupational Stress Inventory, IPAT Anxiety Scale, and the Wahler Physical Symptoms Inventory. None of the test results were significant. [Tr. 117.] Clegg was diagnosed with psychosocial stressors of 3-Moderate in Axis IV, and given a GAF of 60,[1] with the highest at the time being 75.[2] Dr. Shiro recommended psychotherapy and found that Clegg was temporarily disabled from a psychiatric standpoint, but in no need of vocational rehabilitation or medication. Clegg was also examined by psychologist Dr. Izzi in 1994. While most of the tests could not be adequately completed, and the ALJ discounted them for this reason, Dr. Izzi noted: (1) that Clegg may [have been] "attempting to appear worse off than, in fact, she actually is," [Tr. 144, 146.], and (2) Clegg's test scores would be similar to those of malingerers, [Tr. 146.].
 
 
 9
 Clegg argues that this court must remand on the basis of a June 5, 1995, report by psychologist, Dr. Wendel, which Clegg attached to her objections to the Magistrate Judge's Report and Recommendation after all administrative proceedings were completed. A reviewing court may consider new evidence so long as it is material and there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter. Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir.1984). If new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. See Booz v. Secretary of Health and Human Serv., 734 F.2d 1378, 1380 (9th Cir.1984).
 
 
 10
 Clegg contends that the report is material because it was submitted to rebut Dr. Izzi's comments on Clegg's malingering. Dr. Izzi's reservations, however, were not the sole reason for the ALJ's determination. Moreover, the report does not specifically cover the benefits period at issue. Therefore, we find the new report is not material. Even if it were, Clegg offers no reason why she had not solicited this information from Dr. Wendell during the administrative appellate proceedings. The report was issued a year after the ALJ's adverse disposition in this case, and is therefore highly questionable. See Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.1989) (new medical report following adverse administrative decision denying benefits carries little, if any, weight) (citing Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.1985)); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984) (retroactive psychiatric opinions are "notoriously unreliable."). There is no basis for remand on this ground.
 
 
 11
 Given the abundant evidence showing that Clegg's nonexertional limitations were mild, if not doubtful, the ALJ's application of Grids to make a finding of not disabled was appropriate.[3]
 
 
 12
 B. Evaluation of Subjective Complaints of Pain
 
 
 13
 Clegg also argues that the ALJ erred in evaluating Clegg's subjective complaints of pain. An ALJ is not required to believe pain testimony if there are no objective medical findings which "could reasonably be expected to cause some pain." Dodrill v. Shalala, 12 F.2d 915, 917 (9th Cir.1993) (citing Fair, 885 F.2d at 601). The claimant is required to produce medical evidence which is reasonably likely to cause the alleged pain. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (en banc) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986)). Once such evidence is produced, the ALJ may not discredit the claimant's allegations of the severity of the pain solely on the ground that the allegations are unsupported by objective medical evidence. Id. If the ALJ rejects a claimant's complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990)). Those reasons must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1996) (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989)). General findings are insufficient; the ALJ must specifically state what testimony is not credible and what evidence undermines the claimant's complaints. Macri, 93 F.3d at 544; Dodrill, 12 F.3d at 918 (citing Varney v. Secretary of Health and Human Serv., 846 F.2d 581, 584 (9th Cir.), rev'd on other grounds upon reh'g, 859 F.2d 1396 (9th Cir.1988)).
 
 
 14
 In this case, objective medical evidence did provide some support for Clegg's allegations of pain.[4] The ALJ, therefore, was required to specifically explain why he found Clegg's pain testimony not to be credible. This, the ALJ did. First, Clegg testified that when she was in pain, she saw a physician. According to her disability reports and medication list, however, Clegg may have seen a physician only once between March 1993 and March 1994. In addition, six days prior to the hearing, she told Dr. Rashti that she was not under treatment at all. Second, Clegg testified that she never sought ongoing medical treatment for her pain because different physicians told her that nothing would relieve the pain but surgery, which she fears. She could not, however, name any physician who recommended such surgery. Nor do her treating physician's reports reveal such a recommendation. Third, Clegg denied that she was bothered by anything aside from radicular low back pain, left knee pain and depression. Following that testimony, however, she testified to weakness in her hands to the point that she drops objects as light as glasses or cups. Fourth, the ALJ found claimant's inability to remember the name of the anti-depressant medication she was allegedly taking or the doctor who allegedly prescribed it, to be unconvincing. Finally, the ALJ stated that overall, Clegg's testimony was evasive, contradictory and not persuasive.
 
 
 15
 We find the ALJ's reasons for discounting Clegg's pain testimony to be adequately cogent, clear and convincing. The Commissioner did not err by rejecting Clegg's subjective pain testimony.
 
 C. Chiropractor's Opinion
 
 16
 Clegg contends that the ALJ erred in disregarding the opinion of Clegg's treating chiropractor, Dr. Revere. Under the benefits regulations, while information provided by a chiropractor may be helpful to understanding an impairment, it is not an acceptable source of medical evidence for an impairment. 20 C.F.R. §§ 404.1513(a) and (e). Notwithstanding, if an ALJ wishes to discount the observations of non-medical sources or lay witnesses, the ALJ must give reasons. Dodrill, 12 F.3d at 918-19.
 
 
 17
 Here, the ALJ discussed Dr. Revere's findings and reports at some length and found his expertise, accuracy and objectivity to be questionable. At several points, the ALJ detailed what he found to be doubtful evidence. For example, the ALJ reports:
 
 
 18
 Although he did not go so far as to call it atrophy, Dr. Revere took numerous circumferential measurements of the upper and lower extremities, and listed minuscule, 1/4 to 1/2-inch disparities as "objective factors" of disability.
 
 
 19
 More importantly, the ALJ stressed the abundance of contradictory medical evidence provided by both Dr. Cohen, another of Clegg's treating physicians, and Dr. Rashti. See Vincent, 739 F.2d at 1395 (ALJ properly discounted lay testimony that conflicted with available medical evidence); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987) (ALJ may resolve conflict between experts so long as there is "more than one rational interpretation of the evidence.").
 
 
 20
 We conclude that the ALJ adequately explained why he discounted Dr. Revere's evidence. The ALJ was well within his administrative discretion to disregard Dr. Revere's opinion, particularly in light of the weightier medical opinions and records provided by other treating physicians at his disposal.
 
 D. Full and Fair Development of Record
 
 21
 Clegg also contends that the ALJ did not fully and fairly develop the record regarding Clegg's depression and mental condition. Not only did Clegg fail to timely raise this argument before the Appeals Council, but she failed to raise it before the district court in either her objections to the Magistrate Judge's Report and Recommendation or her Motion for Summary Judgment. We, therefore, are precluded from reviewing the merits of this argument. Avol v. Secretary of Health & Human Servs., 883 F.2d 659, 661 (9th Cir.1989); see also Marathon Oil Co. v. United States, 807 F.2d 759, 767 (9th Cir.1986) ("As a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time."). Plaintiff suggests that we create a rare exception to the well-established rules of appellate review under Singleton v. Wulff, 428 U.S. 106, 120-121 (1976). This case does not warrant such an exception, and we decline to make one here.
 
 E. "Equaling" the Listing of Impairments
 
 22
 Next, Clegg contends that the ALJ should have found that Clegg's condition "equaled" the listing of impairments. If a claimant's impairment does not meet the criteria specified in the listings, she must be found disabled if her condition "is equal to" a listed impairment. 20 C.F.R. § 404.1520(d). If a claimant has more than one impairment, the Commissioner must determine "whether the combination of your impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." Lester, 81 F.3d at 829 (citations omitted). The Commissioner must consider whether the "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." Id. (quoting 20 C.F.R. § 404.1529(d)(3)).
 
 
 23
 In this case, Clegg argues that she equals Listing 1.05(C) of 20 C.F.R. Pt. 404, Subpt. P, App. 1, which states:
 
 
 24
 Other vertebrogenic disorders (e.g., herniated nucleus puploses, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2: 1. Pain, muscle spasm, and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 25
 Clegg contends that remand is necessary because the ALJ inadequately explained why Listing 1.05(C) in particular was not met. The ALJ, however, is under no duty to specifically "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.1990). The regulations merely require the Commissioner to "review the symptoms," 20 C.F.R. § 404.1526, and make specific findings essential to the conclusion. Gonzales, 914 F.2d at 1200.
 
 
 26
 The ALJ's report contains specific findings that Clegg lacked both requirements under Listing 1.05(C) for a period of at least three months. For example, the report states:
 
 
 27
 X-rays of the claimant's skull, dorsal spine and cervical spine in January 1992 were essentially normal, as was a lumbar CT scan done in February 1992. As of February 18, 1992, her orthopedic complaints were reportedly minimal. She no longer had a gait disturbance, paravertebral muscle spasm, diminished left Achilles reflex or positive straight leg raising on the left. The findings were limited to tenderness and decreased range of motion of the back, and the claimant was released to return to work with no restrictions.
 
 
 28
 The record also shows that in February, 1992, she had 80% range of motion in her spine, and was able to reach within 10 inches of the floor. [Tr. 83]. Since Clegg's treating physician made these findings within two months of her accident, even if Clegg may have satisfied the listing at one point, the record fails to show that her condition persisted for three months as required. Therefore, the ALJ's finding that Clegg did not meet or equal the listings is supported by substantial evidence.
 
 F. Capability of Performing Light Work
 
 29
 Finally, Clegg argues that no substantial evidence supports the ALJ's determination that Clegg retained the Residual Functional Capacity ("RFC")[5] to perform light work. We disagree. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b) (disability and SSI definitions respectively). It also requires that a worker be able to do "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. If someone can do light work, it is presumed that she can do sedentary work as well, unless there are additional limiting factors such as the inability to sit for long periods of time. Id.
 
 
 30
 While the ALJ found that Clegg's impairments precluded her from doing her past relevant work as a belt sander operator, he also found that Clegg's capacity to perform basic work-related activities was limited only by her inability to lift more than 20 pounds and her inability to do repetitive bending or stooping activities. That finding was supported by Clegg's medical records. Clegg was treated for two months following her fall in January, 1992, for low back and left knee pain and for two or three months for anxiety and depression attributed to those injuries. By February 18, 1992, Clegg's treating orthopedist, Dr. Cohen, released Clegg to return to work with no restrictions. A fortiori, if Clegg could return to a medium-exertional level position as a belt sander operator, a finding that Clegg can do light work is presumed. 20 C.F.R. § 404.1567. Moreover, Clegg's most recent medical examination by Dr. Rashti in April, 1994, revealed nothing wrong with Clegg orthopedically except for her subjective complaints of pain and numbness in one toe that did not affect her gait. Dr. Rashti concluded that Clegg should not lift more than 25 pounds frequently and 50 pounds occasionally and that she may perform occasional stooping, crouching, and kneeling.
 
 
 31
 Clegg argues that the ALJ improperly ignored the vocational expert's ("VE" 's) testimony that Clegg could not perform "her past work or any other work." A VE's opinion is relevant to a claimant's ability to fit into the job market, not whether the claimant is medically impaired or not. See Heckler v. Campbell, 461 U.S. 458, 461 (1983) (describing role of vocational expert as determining whether jobs existed in the national economy that the claimant could perform); DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir.1991) (VE's testimony goes toward finding that claimant can perform jobs in the national economy).
 
 
 32
 If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the [Commissioner] to show that the claimant can do other kinds of work. Without other reliable evidence of a claimant's ability to perform specific jobs, the [Commissioner] must use a vocational expert to meet that burden.
 
 
 33
 Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir.1993) (citation omitted).
 
 
 34
 In this case, the ALJ relied upon Social Security regulations to find that Clegg could do light work. The regulations explicitly provide that if a person can stoop occasionally, the sedentary and light-work job base remains virtually intact. Examples of Nonexertional Impairments and Their Effects in the Occupational Base, Social Sec. Rul. 85-15. Therefore, the ALJ had other reliable evidence at his disposal, and did not have to rely on the VE in determining Clegg's RFC.
 
 
 35
 Nor does the VE's testimony contradict the ALJ's conclusion as a lay opinion. The hypotheticals reviewed by the ALJ inaccurately described a person with "an inability to do prolonged standing and walking." Because the hypotheticals posed did not reflect Clegg's condition, they were of no evidentiary value. Matthews, 10 F.3d at 681. Insofar as the ALJ failed to provide any reasons for ignoring the VE's lay opinion that Clegg could not perform any work, such error was harmless in light of the other more developed evidence on the question. See id. (incomplete hypothetical posed to VE irrelevant to ALJ's determination, therefore, error in excluding portion of hypothetical was harmless). Therefore, the Commissioner's determination that Clegg is capable of performing light work was supported by substantial evidence.
 
 CONCLUSION
 
 36
 The district court's grant of summary judgment in favor of the Commissioner is AFFIRMED.
 
 
 
 **
 The Panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 * Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 GAF of 60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peer or coworkers). Diagnostic and Statistical Manual of Mental Disorders-IV [hereinafter "DSM-IV "] at 32 (4th ed.1994)
 
 
 [2]
 GAF of 75 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning. DSM-IV, at 32
 
 
 [3]
 While Clegg contends that there is a causal relationship between her pain and her depression and anxiety, Clegg argues at the same time that pain, separate and apart from her depression and anxiety, is a further nonexertional limitation that precludes the use of the Grids. We uphold the ALJ's decision to discount Clegg's pain testimony, as explained below. Therefore, the ALJ's use of the Grids in spite of Clegg's allegations of pain, remains proper
 
 
 [4]
 We accept Clegg's contention that her 1992 MRI provides objective support for her allegations of pain for purposes of Bunnell. The MRI showed disc herniation with encroachment on the epidural fat, as well as on the dural sac, compromise of the right S1 nerve root within the spinal canal and the right fifth nerve, a minimal annular bulge of 1 to 2 mm. at L4-5, and L5-S1, and minor degenerative facet changes. Clegg's treating physician Dr. Cohen, however, found the MRI to be normal. Later examinations also revealed no persistent spinal nerve root damage
 
 
 [5]
 A person's Residual Functional Capacity is what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a); Smolen, 80 F.3d at 1291