**Larry JOHNSON, Plaintiff**

v.

**John J. CALLAHAN,[1] Acting Commissioner, Social Security Administration, Defendant.**

**Civil No. 96–6316–FR.**

United States District Court, D. Oregon.

Sept. 11, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of the Social Security Administration, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is substituted, therefore, for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Martin J. McKeown, Eugene, OR, for Plaintiff.

Kristine Olson, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, OR, Ben A. Port-er, Special Asst. U.S. Atty., Social Security Admin., Seattle, WA, for Defendant.

## OPINION

FRYE, District Judge.

The plaintiff, Larry Johnson, brings this action pursuant to section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying his application for supplemental security income (SSI) benefits.

## BACKGROUND

Larry Johnson filed an application for SSI benefits with a protected filing date of November 3, 1993. The application was denied initially and upon reconsideration. After a timely request for a hearing, Johnson, represented by counsel, appeared and testified before an Administrative Law Judge (ALJ) on September 11, 1995, as did Jennifer Coiner, a vocational expert.

On November 13, 1995, the ALJ issued a decision finding that Johnson was not disabled within the meaning of the Act and therefore not entitled to SSI benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## FACTS

1. *Johnson's Medical History*

At the time of the hearing on September 11, 1995, Johnson was thirty years old. He has an eighth-grade education and has taken some special education classes. He claims to be functionally illiterate. Johnson contends that he became disabled in 1983 because of carpal tunnel syndrome, chronic low back pain, and leg and ankle pain. Johnson has worked a total of twenty-five weeks during his life. He did not look for work during the four years prior to the hearing. He has lived with his parents for the past ten years.

Johnson's back, leg and ankle pain were caused by a motorcycle accident he had in 1987. He was also in an automobile accident in June of 1994. Johnson testified that he had constant pain in his lower back, making

it difficult for him to walk at times, and that his back and leg problems cause him to fall at times. His difficulties in performing tasks at work have caused him to lose many jobs after only a few weeks. A typical day for Johnson is to get up, shower, eat breakfast, and watch television. He sees friends a couple of times a week. Johnson used to drive, but he lost his driver's license a few years ago after he drove a friend's car with no proof of insurance. Johnson drinks beer less often than daily and smokes marijuana when he has it available, but he does not believe that drug use or alcohol abuse is causing him any problem in finding or keeping a job.

Johnson testified that he could read some things, such as restaurant menus and the written driver's license test. The carpal tunnel syndrome from which he suffers causes him difficulty with lifting or grabbing objects. Johnson takes care of his personal grooming without assistance, cooks at times, and can do yardwork as long as he takes breaks to rest his back. At the time of the hearing, Johnson was receiving no treatment, other than nonprescription medications.

### 2. The Physicians' Reports

On February 4, 1994, Johnson's treating physician, Dr. Mark Jewell, reported that Johnson had had surgery on his right hand for a carpal tunnel condition, and that Johnson had had similar symptoms in his left hand. Dr. Jewell was of the opinion that Johnson was capable of employment with the physical limitation of non-repetitious hand and arm motions, and that Johnson could perform normal activities of daily living. Dr. Jewell was concerned that Johnson had secondary gain/functional overlay.

On March 22, 1994, examining physician Dr. Charles Phillips, reported:

On today's exam I can find nothing to substantiate his subjective complaints. He enjoys full range of motion in his back. He is able to arise from a lying to a sitting, and a sitting to a standing position without any problems. He is able to stand on his toes and heels without problems. There is no tenderness noted. Of note, he clearly was embellishing his exam claiming positive leg lift signs in the lying position, however, when in the sitting position these are completely negative. He also refuses to flex his right foot while lying down in examining the back and foot. However, he is able to stand on his toes and his heels on the right leg one-legged without any problems.

... I do not feel that either his back or his lower extremity represent any significant impairment at this time, and the etiology of his chronic pains is unknown.

In regards to his complaints of right hand numbness and right grip strength weakening ... I would diagnosis this as a mild carpal tunnel syndrome, possibly just a residual from his previous episode. I do not feel that he is significantly limited by this at this time.

Tr. 146–47.

On September 10, 1994, examining physician Dr. Lance Turner reported that Johnson did not meet the strict criteria for major depression, but that he had a decreased mood. Dr. Turner was of the opinion that Johnson had more of an alcohol problem than he would admit to. Finally, Dr. Turner was of the opinion that Johnson would be able to work, even in light of his symptoms of depression. Dr. Turner concluded that the major reason that Johnson was not working was that he has an antisocial personality which makes it difficult for him to interact with people, and that he needs to improve his social skills and his education before he can work on a daily basis.

Dr. Timothy Straub treated Johnson after his 1987 motorcycle accident. After Johnson's last visit on May 2, 1988, Dr. Straub reported that Johnson had a mild permanent impairment to his back and lower extremity, but that there was no significant permanent impairment in the knee, ankle or foot. Dr. Straub released Johnson to full activities. On January 25, 1990, Dr. Straub examined Johnson at the request of the Social Security Administration. He reported that Johnson complained of low back pain and stiffness and occasional ankle and knee problems. Dr. Straub concluded that Johnson could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand or walk for at

least two hours during an eight-hour work day.

On November 3, 1995, after the date of the hearing before the ALJ, a psychologist, Dr. Robert Kurlychek, examined Johnson to assess his intellectual abilities. Because Johnson had not paid Dr. Kurlychek, Dr. Kurlychek would not release his report until December 26, 1995, well over a month after the ALJ concluded that Johnson was not disabled. In that report, Dr. Kurlychek determined that Johnson had a verbal IQ score of 72, a performance IQ score of 79, and a full scale IQ score of 72. Taking into consideration normal variability and standard error of measurement, Dr. Kurlychek reported that with 95% confidence, Johnson's true verbal score would fall between 67 and 77; his true performance score would fall between 71 and 87; his true full scale score would fall between 70 and 78; and, thus, "his verbal intellectual abilities may fall in the mentally retarded range." Tr. 192. Dr. Kurlychek also reported that Johnson's "ability to seek and maintain a wide range of jobs is seriously compromised." *Id.* Dr. Kurlychek believes that Johnson's ability to be successful in a job is threatened by his "mild to moderate deficiencies in attention and concentration, limited information capacity, and problems with reasoning and judgment." *Id.*

### 3. *The AL's Decision*

The ALJ issued his decision without the benefit of Dr. Kurlychek's report. The ALJ found that Johnson had severe impairments in the form of back, leg and ankle pain; bilateral carpal tunnel syndrome; and affective, personality, and substance addiction disorders, but that the impairments did not meet the criteria of the listed impairments, either individually or in combination.

The ALJ concluded that Johnson:

retains the residual functional capacity to perform a reduced range of medium exertional level work which precludes fine motor manipulation tasks. The claimant should not work with the general public or engage in frequent interaction with co-workers. He is functionally illiterate and cannot perform work which involves read-ing, writing, or math skills. He is limited to simple, routine work.

Tr. 15.

In reaching this conclusion, the ALJ found that Johnson's testimony of a more profound and disabling level of symptoms and dysfunction were not credible. He noted that Johnson had only a minimal treatment regimen, and that he had been treated conservatively and without extensive medical management. The ALJ also noted that Johnson's impairments had not significantly compromised his daily living activities. The ALJ noted that Johnson cooked, cleaned, shopped, performed yard work, took care of personal grooming needs, and frequently visited with friends and relatives. The ALJ also reviewed the conclusions of all of the doctors whose reports were in the record at the time of the hearing. He did not have the report of Dr. Kurlychek. The doctors who submitted reports noted limitations from which Johnson suffers, but all concluded that he could be employed.

Based on the vocational expert's testimony, the ALJ found that Johnson had the residual functional capacity to perform many jobs found in the national economy and, thus, was not disabled as defined in the Act.

### CONTENTIONS OF THE PARTIES

Johnson contends that he is conclusively disabled because the medical report from Dr. Kurlychek proves that he meets the listed impairment 12.05 because of mental retardation combined with other severe impairments of carpal tunnel syndrome, chronic back, leg and ankle pain, and affective, personality, and substance addiction disorders.

The Commissioner contends that the decision denying SSI benefits is based on substantial evidence and should be affirmed.

### LEGAL STANDARDS

The Social Security Act (the Act) provides for payment of disability insurance benefits (DIB) to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, sup-

plemental security income (SSI) benefits may be available to individuals who are age sixty-five or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

■ The burden of proof to establish a disability rests upon the claimant. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir.1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI benefits due to disability. 20 C.F.R. § 416.920; *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 416.920(e).

■ If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Drouin*, 966 F.2d at 1257(SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. § 416.920(f).

When an individual seeks SSI benefits because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. § 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Drouin*, 966 F.2d at 1257. It is more than a scintilla, but less than a preponderance, of the evidence. *Id.; Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir.1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Gonzalez*, 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. *Id.* The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

## ANALYSIS AND RULING

■ The claimant, Larry Johnson, complains of physical and mental disabilities. None of the treating or examining physicians concluded that the physical problems with his back, leg, ankles and wrists were of sufficient magnitude to preclude him from working with some limitations. After reviewing the record, the court finds that the ALJ's decision that Johnson's physical impairments are not disabling under the Act is supported by substantial evidence and is based on the proper legal standards.

■ The ALJ concluded that Johnson's testimony of a profound and disabling level of symptoms and dysfunctions was not credible. When deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater,* 80 F.3d 1273, 1281–82 (9th Cir.1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.* at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id.* at 1284.

In rejecting Johnson's testimony about the severity of his symptoms, the ALJ noted that Johnson had only minimal and conservative treatment during the last several years before the hearing, and that his daily activities are inconsistent with his testimony of symptoms caused by his physical and mental impairments. Namely, Johnson cooks, cleans, grooms himself, shops, helps with.the yardwork, and frequently visits with friends and relatives. In addition, none of the physicians' reports contain complaints of symptoms to the extent currently alleged by Johnson, and some voice concern about exaggeration of symptoms. The court finds that the ALJ properly rejected the subjective testimony of Johnson by making specific findings stating clear and convincing reasons for rejecting his testimony and by noting the facts in the record that lead to the rejection of his testimony.

Based on Dr. Kurlychek's report, Johnson contends that he meets or equals the listed impairment 12.05 for mental retardation and autism and, thus, is conclusively presumed disabled under the Act. While Dr. Kurlychek's report was not prepared until after the ALJ issued his decision, the Appeals Council considered the report when it declined to review the ALJ's decision.

The relevant portion of impairment 12.05 states:

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. . . .

20 C.F.R. Ch. III, Pt. 404, Subpart P., Appendix 1.

■ Medical reports issued after the Commissioner's decision, such as the report of Dr. Kurlychek, are deemed less persuasive than those issued prior to the decision. *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir.1996). Assuming that Dr. Kurlychek's report is fully persuasive, however, the court concludes that Johnson's mental impairments do not meet or equal the listed impairment 12.05. Dr. Kurlychek tested Johnson at 72, 79 and 72 for verbal, performance, and full scale IQ scores, respectively. All of these scores are above the test results required in the listed

impairment 12.05. Assuming standard testing errors, Johnson tested at 67–77, 71–87, and 70–78 for verbal, performance, and full scale IQ scores, respectively. Even if Johnson's true IQ scores were all at the low end of these ranges, two of the measurements barely fall within the required result for the listed impairment 12.05. It is just as likely that Johnson's true scores are at the high end of these ranges, and that he scores well above the mentally retarded range. Moreover, Dr. Kurlychek did not state that Johnson's intellectual abilities are in the mentally retarded range, but that they "may" be there.

The listed impairment 12.05 also requires an impairment imposing additional and significant work-related limitation of function. The ALJ found that Johnson had severe impairments in the form of back, leg and ankle pain; bilateral carpal tunnel syndrome; and affective, personality, and substance addiction disorders. But none of the treating or examining physicians recommended that Johnson not work because of the impairments, and none imposed what the court considers significant limitations. While Dr. Kurlychek stated that Johnson's success at work would be impeded and that his ability to seek a wide range of jobs was compromised, he did not state that Johnson could not work *in any type of job*. (Emphasis added by the court). The ALJ included in his hypothetical to the vocational expert the fact that Johnson could not interact with the general public, and the fact that his interactions with co-workers would have to be infrequent. The vocational expert gave examples of jobs fitting these limitations as well as the other limitations concerning Johnson's physical impairments and his illiteracy. The court concludes that Dr. Kurlychek's report does not provide a reason for this court not to affirm the decision of the ALJ that Johnson is not disabled under the Act.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.