**Elijio PAYAN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security Administration, Defendant.**

**No. CV 95–5692(RC).**

United States District Court, C.D. California.

Oct. 3, 1996.

Lawrence D. Rohlfing, Santa Fe Springs, CA, for Plaintiff.

Jon Pearson, Asst. U.S. Attorney, Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Elijio Payan ("plaintiff") filed a complaint on August 24, 1995, seeking review of the Commissioner's denial of disability benefits. The plaintiff filed a motion for summary judgment on January 24, 1996, and the defendant filed a cross-motion for summary judgment on March 25, 1996. The plaintiff's reply brief was filed on April 8, 1996.

## BACKGROUND

On May 25, 1993, the plaintiff submitted a claim for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 423, asserting an inability to work since March 2, 1991, due to neck, back, shoulder, and lower extremity pain. (Certified Administrative Record ("A.R.") 84–87, 123). On June 23, 1993,[1] the plaintiff submitted a claim for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a). (A.R.88–91). The plaintiff's applications were initially denied on October 5, 1993, and denied following reconsideration on February 16, 1994. (A.R.93–105). The plaintiff then requested a hearing, which was held before Administrative Law Judge Milan M. Dostal ("ALJ") on November 14, 1994. (A.R.58, 106–107). At the hearing, the ALJ examined medical records and heard the testimony of plaintiff and a vocational expert. (A.R.58–83). On December 21, 1994, the ALJ issued a decision finding plaintiff not disabled. (A.R.25–40). The plaintiff sought review by the Appeals Council; however, review was denied on September 11, 1995. (A.R.4–6, 23–24).[2]

The ALJ found that plaintiff is unable to return to his past relevant work as roofer, sandblaster/equipment tender, janitor and farm worker. (A.R.32–33). However, the ALJ further determined that plaintiff was not disabled because he could perform certain medium work jobs. (A.R.34–35).

The plaintiff was born in Mexico on December 11, 1937. (A.R.60). He is now 58 years old. He has, at most, a sixth grade

---

1. The plaintiff's protective filing date is May 3, 1993. (A.R.91).

2. The Appeals Council originally denied review on June 28, 1995; however, this decision was vacated after plaintiff submitted new medical records.

education.[3] (A.R. 127). The plaintiff last worked as a machine operator from April 1990 to March 1991. (A.R.335). Prior to that, the plaintiff was employed as a handyman (February 1988 through July 1988), a machine operator (October 1987 through December 1988), and a roofer (June 14, 1983 through June 1985). (A.R.335). The plaintiff also reported that he has been employed as a farm worker. (A.R.64).

The plaintiff sustained a work-related injury on December 1, 1990, when he experienced a sharp pop in his lower back while helping a co-worker pull a pallet loaded with metal tubes weighing approximately 1300 pounds. (A.R.264, 287). The plaintiff also has a history of back injury stemming from a fall from a house, and he suffered a work-related injury to his right foot when he struck his foot on a metal plate on February 25, 1991. (A.R.217, 287). The plaintiff has also been diagnosed with a severe right arm carpal tunnel syndrome. (A.R.320). Since December 1, 1990, plaintiff has developed neck, back, shoulder, and lower extremity pain, as well as depression. (A.R.279, 288, 303, 311). At the time of the administrative hearing, the plaintiff was taking Benazepril[4] and Ibuprofen.[5] (A.R.64–66).

The plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ misevaluated plaintiff's exertional and nonexertional limitations by failing to translate language used in workers' compensation disability reports into comparable Social Security terminology.

## DISCUSSION

### I

Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir.1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Secretary of Health & Human Services,* 846 F.2d 573, 576 (9th Cir.1988) (citations omitted).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports plaintiff's claims. *Torske v. Richardson,* 484 F.2d 59, 60 (9th Cir.1973) (per curiam), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *Harvey v. Richardson,* 451 F.2d 589, 590 (9th Cir.1971) (per curiam). The Court must consider the record as a whole, considering adverse as well as supporting evidence. *Green v. Heckler,* 803 F.2d 528, 529–30 (9th Cir.1986). The Commissioner's decision should be upheld even if the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir.1984). The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).

A person is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted or is expected to last for a continuous period of at least twelve months 20 C.F.R. § 416.905(a). The plaintiff has the burden of establishing a *prima facie* case for disability. *Drouin v. Sullivan,* 966

---

3. At the administrative hearing, plaintiff testified that the only education that he had was four months of studying English in the United States. (A.R.61–62). However, an earlier disability report noted a sixth grade education. (A.R.127).

4. Benazepril is used to treat high blood pressure. *The PDR Family Guide to Prescription Drugs* 383 (2d ed.1994).

5. At the hearing, plaintiff testified that these medications were the only treatment he was currently receiving (A.R.66); however, plaintiff also presented an eleven-item current medication list. (A.R.336–337).

F.2d 1255, 1257 (9th Cir.1992) (citing *Gallant v. Heckler,* 753 F.2d at 1452.)

■■■ Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial and gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, the **Second Step** requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting him to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a "severe" impairment, the **Third Step** requires the ALJ to compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in Listing, the **Fourth Step** requires the ALJ to determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform his/her past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). The plaintiff has the burden of proving he or she is unable to perform past relevant work. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, for **Step Five**, the burden shifts to the Commissioner to prove that the claimant, based on his age, education, work experience and residual functional capacity, can perform other substantial and gainful work. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Howard v. Heckler,* 782 F.2d at 1486; *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir.1989); *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). "It is incumbent on the [Commissioner] at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration other requirements of the job as well as the claimant's age, education, and background." *Hall v. Sec. of Health, Educ. & Welfare,* 602 F.2d 1372, 1377 (9th Cir.1979) (citations omitted). In certain instances, the Commissioner is entitled to rely on the medical-vocational guidelines ("the Grids") to rebut the claimant's *prima facie* case of disability. 20 C.F.R. § 404, Subpart P, App. 2; *Gonzalez v. Sec. of Health & Human Serv.,* 784 F.2d 1417, 1419 (9th Cir.1986). However, the Commissioner cannot rely on the Grids when the claimant suffers from nonexertional limitations; but, rather must present the testimony of a vocational expert. *See Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985); Social Security Ruling 83–12, 1983 WL 31253, *1.

Applying the five-step evaluation process, the ALJ determined that plaintiff has not engaged in substantial gainful activity since March 2, 1991. (Step One). The ALJ also found that plaintiff has severe physical impairments, including mild degenerative changes of the cervical and lumbar spine, spondylosis [6] and spondylolisthesis [7] at L5, an old left knee fracture, and right hand carpal tunnel syndrome. (Step Two). However, the ALJ concluded that none of the plaintiff's impairments, singly or in combination, meet any of the Listings. (Step Three). The ALJ then determined that plaintiff cannot perform any of his past relevant work. (Step Four). However, applying the Grids, the ALJ found that, while plaintiff could not perform a full range of medium work, he has the residual functional capacity to perform

---

6. Spondylosis is "a general term for degenerative changes due to osteoarthritis." *Dorland's Illustrated Medical Dictionary,* 1564 (28th ed.1994).

7. *Spondylolisthesis is* "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect of the pars interarticularis." *Dorland's Illustrated Medical Dictionary,* 1563 (28th ed.1994).

the jobs cited by the vocational expert, specifically machine tending and weight testing, and, thus, is not disabled. (Step Five)

## II

■ The plaintiff objects to the ALJ's determination that he can perform certain medium work, arguing that the ALJ erred in failing to translate the worker's compensation disability reports of Lynn Wilson, M.D., an orthopedic surgeon, David Kim, M.D., an orthopedic surgeon, and David Ascher, M.D., into terminology relevant to determining disability status under the Social Security Act.

The plaintiff was evaluated by Dr. Wilson on March 29, 1991. (A.R.217–219). Dr. Wilson reviewed x-rays, which revealed a Grade 1 spondylolisthesis, with bilateral pars intraarticularis[8] defects, and moderately severe degenerative spondylosis of the upper spine. (A.R.218). Dr. Wilson opined that the plaintiff's condition was permanent and stationary (workers' compensation terminology)and that he should be precluded from performing heavy lifting.[9] (A.R.219).

On April 26, 1991, Dr. Kim examined plaintiff and diagnosed cervical spondylolsis, spondylolisthesis of L5 on S1 with a first degree displacement, degenerative osteoarthritis of the lumbar spine, and malunion fracture of the left knee joint. On April 29, 1991, Dr. Kim obtained x-rays of the cervical and lumbar spine, as well as the right knee and right foot. (A.R.267). Cervical spine x-rays revealed advanced degenerative osteoarthritis and marked narrowing of the C4–5, C5–6 and C6–7 disc spaces, with anterior marginal spur formations and neural foraminal encroachment, especially in the lower cervical disc at C6–7. (A.R.267). Lumbar spine x-rays revealed generalized degenerative osteoarthritis throughout the lumbar spine, with slight narrowing of the disc spaces and anterior marginal spur formations, as well as a defect in the pars interarticularis at L5, bilaterally, with a first degree anterior dis-

placement at L5 on S1. Right knee joint x-rays revealed a severely displaced malunion fracture of the lateral tibial plateau with early traumatic arthritis of the left knee joint at the tibial femoral joint, especially in the lateral joint compartment. (A.R.267). Right foot x-rays revealed bone spur formation dorsally at the joint between the first cuneiform and the first metatarsal. (A.R.267). On August 28, 1991, Dr. Kim determined that the plaintiff was permanent and stationary and issued a prophylactic work restriction of no heavy work. (A.R.259). On August 9, 1993, the plaintiff was reexamined by Dr. Kim, who found that the plaintiff retained the capacity to lift and/or carry weights of up to 50 pounds, to frequently lift and/or carry weights of up to 25 pounds, and to stand and/or walk for less than about 6 hours in an 8–hour day. (A.R.313).

On April 7, 1992, the plaintiff underwent an Agreed Medical Examination with Dr. Ascher, who diagnosed chronic musculoligamentous derangement of the low back with a large functional element from either low threshold of pain or exaggeration. (A.R.290). However, Dr. Ascher also determined that the plaintiff was totally and permanently disabled from his prior work. (A.R.290).

In *Desrosiers v. Sec. of Health & Human Serv.*, 846 F.2d 573 (9th Cir.1988), the Ninth Circuit held that an ALJ's decision that a claimant could perform light work was not supported by substantial evidence because the ALJ had not adequately considered definitional differences between the California workers' compensation system and the Social Security Act. The Ninth Circuit, in discussing the California workers' compensation system, noted that the workers' compensation categories are not based on strength but on whether a claimant sits, stands, or walks for most of the day. *Id.* at 576. The court then stated that "[t]he categories of work under the Social Security disability scheme are

---

8. The pars interarticularis is "the part of the lamina between the superior and inferior articular processes of the lumbar vertebra." *Dorland's Illustrated Medical Dictionary*, 1237 (28th ed.1994).

9. A disability precluding heavy lifting "contemplates the individual has lost approximately half of his pre-injury capacity for lifting." California Guidelines for Work Capacity, Schedule for Rating Permanent Disabilities, 1–A (Labor Code of California).

measured quite differently. They are differentiated primarily by step increases in lifting capacities." *Id.* Thus, the *Desrosiers* court held that a treating physician's determination that a claimant could only perform sedentary work was not contradicted by two workers' compensation evaluation reports that precluded the claimant from heavy work because these reports did not determine the level of work the claimant could perform under the Social Security Act. *Id.*

██ Here, the medical reports cited by plaintiff support the ALJ's determination that plaintiff can perform certain medium work.[10] Specifically, Dr. Wilson evaluated plaintiff for work-related injuries sustained while working as a machine operator, and gave him a prophylactic work restriction of no heavy lifting. (A.R.217, 219). As previously noted, the California Guidelines for Work Capacity indicate that a disability precluding heavy lifting contemplates the individual has lost approximately half of his pre-injury capacity for lifting. "Although the California Guidelines for Work Capacity are not conclusive in a social security case, the ALJ is entitled to draw inferences logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.1996). The plaintiff acknowledged that his prior work as a machine operator required constant bending and reaching, walking and standing 8 hours a day, **lifting in excess of 100 pounds** and frequently lifting/carrying items weighing over 50 pounds. (A.R.128). Further, Dr. Kim's assessment of August 9, 1993, found that the plaintiff retains the maximum capacity to lift and/or carry up to 50 pounds. (A.R.313). From this evidence, it was reasonable for the ALJ to infer that if plaintiff's lifting capacity were reduced by one half, he would still be able to perform medium work.

Medical records received after the ALJ issued his decision, however, cast substantial doubt on the continuing accuracy of the ALJ's determination that the plaintiff can perform medium work. On May 4, 1995, as a result of right shoulder degenerative joint disease, plaintiff underwent a total right shoulder arthroplasty. (A.R.380–382). On remand (for the reasons discussed below), the ALJ should utilize recent medical evidence to determine what impact, if any, the plaintiff's right shoulder condition has on his lifting ability. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986) ("Where claimant's medical condition is progressively deteriorating, the most recent medical report is the most probative.")

## III

██ A review of the medical records shows that plaintiff was examined psychiatrically only by Malvin Braverman, M.D., a psychiatrist.[11] Dr. Braverman completed two psychiatric reports on plaintiff, an initial report on June 8, 1992, and a supplemental report on August 2, 1992. (A.R.275–286). He diagnosed plaintiff as having a depressive disorder, and he recommended treatment. (A.R.284–285). Dr. Braverman further found that plaintiff had "significant depression, fears and underlying anxieties which would constitute serious distractions in respect to work functioning." (A.R.284).

In his supplemental report, Dr. Braverman assumed that the plaintiff had reached a permanent and stationary status and analyzed plaintiff's mental condition utilizing the workers' compensation psychiatric protocol under Title 8, California Code of Regulations (C.C.R.) § 9726 (1996).[12] Applying the protocol, Dr. Braverman found that plaintiff's

---

**10.** "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. ..." 20 C.F.R. §§ 404.1567(c), 416.967(c).

**11.** Although Viliam Jonec, M.D., completed a Psychiatric Review Technique Form on September 17, 1993, this form was not referred to by the ALJ.

**12.** The protocol lists eight psychiatric factors: (1) the ability to comprehend and follow instructions; (2) ability to perform simple and repetitive

tasks; (3) the ability to maintain a work pace appropriate to a given work load; (4) the ability to perform complex and varied tasks; (5) the ability to relate to other people beyond giving and receiving instructions; (6) the ability to influence people; (7) the ability to make generalizations, evaluations, or decisions without immediate supervision; and (8) the ability to accept and carry out responsibility for direction, control, and planning. Warren L. Hanna, *California Law of Employee Injuries and Workers' Compensation*, 32–22, 32–23 (1996).

ability to follow instructions was moderately impaired due to concentration difficulties, depression and a fixation on physical symptoms (factor 1); that plaintiff's ability to perform simple and repetitive tasks had slight to moderate impairment (factor 2); that plaintiff's ability to maintain a work pace appropriate to a given work load was moderately impaired (factor 3); that plaintiff's ability to perform complex or varied tasks was moderately impaired (factor 4); that plaintiff's ability to relate to other people beyond giving and receiving instructions had slight to moderate impairment (factor 5); that plaintiff's ability to influence people had slight to moderate impairment (factor 6); that plaintiff's ability to make generalizations, evaluations or decisions without immediate supervision had slight to moderate impairment (factor 7); and that plaintiff's ability to accept and carry out responsibility for direction, control and planning was moderately impaired (factor 8). (A.R.276–277). Dr. Braverman then discussed further work problems that the plaintiff would face:

> [Plaintiff] would have impairment in understanding and remembering detailed instructions. He would have significant limitation regarding carrying out detailed instructions. There would be alteration in his capacity to maintain attention and concentration for extended periods, and he would probably have problems in maintaining a schedule, regular attendance and punctuality as a result of distraction by physical symptoms and depression. Further, it probably would be necessary for [plaintiff] to have special supervision in order to maintain his attention on work. It would be unlikely that [plaintiff] would be able to complete a normal work day and work week without interruption as a result of depression and persistent rumination and preoccupation with physical symptoms.

(A.R.277). Dr. Braverman concluded that plaintiff would have very serious difficulties adequately functioning at work. (*Id.*).

The ALJ found that the plaintiff has mild depressive symptoms, with only **slight** limitations relative to his ability to perform activities of daily living and social functioning, and

**mild** deficiencies of concentration, infrequently resulting in his failure to complete tasks in a timely manner. (A.R.33). In making this finding, the ALJ discounted Dr. Braverman's opinion that plaintiff had "marked" depression and fixation upon his physical symptoms, noting that plaintiff's concentration, memory and attention skills were intact and Dr. Braverman had subsequently reported that plaintiff had only slight to moderate limitations in his ability to comprehend and follow instructions, perform simple and complex tasks, work at an active pace, relate to others, and make decisions without immediate supervision. (A.R.32).

The ALJ's analysis of Dr. Braverman's reports is inaccurate, and fails to discuss other relevant findings made by Dr. Braverman, as set forth above. Although the ALJ noted that Dr. Braverman examined the plaintiff in relation to plaintiff's workers' compensation claim, the ALJ failed to properly consider Dr. Braverman's use of workers' compensation terminology. For example, the ALJ, purportedly based on Dr. Braverman's reports, found that plaintiff "had only **slight to moderate limitations**"; whereas, as noted above, Dr. Braverman found that plaintiff had **moderate** impairment in his ability to comprehend and follow instructions and perform complex or varied tasks. This difference is significant. The Schedule for Rating Permanent Disabilities rates psychiatric disabilities on a scale that utilizes different levels of impairment to rate various psychiatric factors. For instance, a slight to moderate impairment in the ability to comprehend and follow instructions has a 20% work function impairment value, while a moderate impairment in that category has a 30% work function impairment value. It is clear from the record that the ALJ did not adequately consider this distinction. *See Desrosiers*, 846 F.2d at 576. Thus, the ALJ's findings that plaintiff has only slight mental limitations and "mild" deficiencies in concentration are not supported by substantial evidence.

## REMEDY

When the Commissioner's decision is not supported by substantial evidence,

the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for regearing." 42 U.S.C. § 405(g). *See Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987).

"If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981)). Remand is appropriate if the record is incomplete and additional evidence could complete the record. *Marcia v. Sullivan,* 900 F.2d at 175 (remand appropriate at Step Three inquiry); *Gamer v. Sec. of Health and Human Serv.,* 815 F.2d 1275, 1280 (9th Cir.1987) (hypothetical question asked of the vocational expert did not include all of plaintiff's impairments).

Here, the ALJ did not correctly evaluate plaintiff's mental impairments, and additional proceedings can remedy that defect, Moreover, The ALJ should also reevaluate plaintiff's physical complaints in light of plaintiff's recent shoulder arthroplasty and age.

### ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied; and (2) the Commissioner's decision is reversed and the action is remanded to the Social Security Administration for further proceedings consistent with this memorandum decision, pursuant to sentence four of 42 U.S.C. § 405(g).