Mary BOWSER, Plaintiff—Appellant,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant—
Appellee.

No. 03–16066.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 9, 2004.*

Decided Feb. 7, 2005.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Eugene Denise Mitchell, Brewer & Mitchell, LLP, Sacramento, CA, for Plaintiff–Appellant.

Caryn L. Goot, Social Security Administration Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: O'SCANNLAIN, COWEN,** and BEA, Circuit Judges.

MEMORANDUM ***

Plaintiff–Appellant Mary Bowser ("Bowser" or "Claimant") appeals the District Court's entry of judgment for Defendant–Appellee Commissioner of Social Security ("Commissioner"), denying Bowser's application for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq.* and §§ 402 *et seq,* respectively.

Bowser alleged disability from her former employment as a wheel assembler for wheelchairs and bicycles as of January 23, 1998, stemming from neck and upper right extremity trauma, depression, headaches, high blood pressure, and knee arthritis. The administrative law judge ("ALJ") determined at step five of the five-step se-

---

** The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

quential process that Bowser retains the residual functional capacity to perform substantial gainful activity in the national economy. She alleges that the District Court overlooked six errors committed by the ALJ. Because we find that the ALJ's findings are free from reversible legal error and supported by substantial evidence, we affirm.

## I.

As the relevant facts and Claimant's medical history are known to the parties, we do not recite them here. Facts and medical background pertinent to disposition of the issues raised on appeal are described below in connection with our analysis of those issues.

## II.

The District Court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Commissioner denying Claimant's applications for DIB and SSI benefits. We have jurisdiction to consider the issues raised by Claimant's timely filed appeal under 28 U.S.C. § 1291.

We review *de novo* the District Court's grant of summary judgment.[1] *Tonapetyan v. Halter,* 242 F.3d 1144, 1147 (9th Cir.2001). We will uphold the Commissioner's decision if it is free of legal error

and supported by substantial evidence. *Id.* The harmless error rule is applicable. *Curry v. Sullivan,* 925 F.2d 1127, 1129 (9th Cir.1990).

## III.

We address each of Claimant's allegations of error in turn.

A. *The ALJ's rejection of the examining physician's opinion that Claimant's degenerative disc disease meets or equals the criteria of former Listing 1.05C of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., App. 1, for "herniated nucleus pulposus" is supported by substantial evidence.*

Step three of the five step evaluation process directs the adjudicator to determine whether, in light of the objective medical evidence, the claimant has a severe impairment or combination of impairments that meets or equals the criteria in the Listing of Impairments, described in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.911(a)(1). If the adjudicator so finds, the claimant is deemed disabled. *Id.*

Justin Howland, M.D., examined Claimant for the purpose of determining whether or not her impairments "meet or equal" a Listed Impairment as defined by 20 C.F.R. § 404.1526. He diagnosed herniated nucleus pulposus,[2] and opined that the con-

1. Although the parties and the District Court refer to the District Court's disposition as "summary judgment," such terminology is most inaccurate. The District Court sat as an appellate forum, as do we, and adjudicated the appeal under the same standards of review as we apply here.

2. Specifically, Dr. Howland documented "tenderness in the right trapezius," "pain" on right lateral bending, and a positive Spurling test. (E.O.R. at 194.) He reported a reduction in Bowser's range of motion in her cervical spine in five of six planes, and in all

planes of her thoracolumbar range of motion. (*Id.*) With respect to motor loss with sensory loss, Dr. Howland found that Bowser exhibited diminished sensation in all but two dermatomes of her arms, (*id.*), and in dermatomes in both her feet (*id.* at 195). The dermatomes corresponded with sensory nerves running from various spinal cord regions. Regarding muscle weakness, Dr. Howland found that Bowser's grip strength tests revealed weakness in her grip with her best grip being on her non-dominant hand. (*Id.* at 194.) Finally, with respect to "reflex loss," Dr. Howland explained that his findings that Bowser "had

dition meets Listing 1.05C (2000).[3]

Listing 1.05 provides in pertinent part:

> 1.05   Disorders of the spine:
>
> . . . .
>
> C.   Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1.   Pain, muscle spasm, and significant limitation of motion in the spine;  and
>
> 2.   Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt.  P, App. 1 (2000).

The ALJ rejected Dr. Howland's opinion because "his examination did not document pain, muscle spasm, and significant limitation of motion in the spine;  and appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss, which are required to be documented in order for a claimant to fit the criteria of Section 1.05C." (E.O.R. at 18.)

A review of the record indicates that Dr. Howland has not set forth any evidence or documentation of muscle spasm in the spine, which is undoubtedly a required element in the Listing.  Indeed, the examination of Henry Edington, M.D., revealed "no muscle spasm or trigger point tenderness . . . in the neck or thoracic spine." (*Id.* at 156.)  Nor does the record disclose

evidence linking muscle spasm in the spine with herniated nucleus pulposus.  To meet the Listing, all of its criteria must be satisfied.  *See* 20 C.F.R. § 416.925(d);  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).  As such, the ALJ's determination that Claimant does not meet the Listing for herniated nucleus pulposus, rendered in contrast to Dr. Howland's opinion, is supported by substantial evidence.

B.   *The ALJ did not err in assessing that Claimant suffers from a "severe impairment" under 20 C.F.R. § 404.1520(c) by failing to consider a combination of all of Claimant's impairments, as diagnosed by her treating and examining physicians.*

In ascertaining at step two of the sequential evaluation process whether Claimant suffers from a "severe" impairment or combination thereof, the ALJ concluded that "[t]he evidence supports a finding that the claimant has degenerative disc disease of the cervical spine and right shoulder impingement syndrome, impairments which can cause significant vocationally relevant limitations." (E.O.R. at 15.) Claimant contends that the ALJ's failure to consider the impact of all of Bowser's afflictions in conducting his step two analysis constitutes legal error.

To the extent that the ALJ has entirely ignored or improperly discounted Claim-

transient clonus bilaterally at the ankle level" and "hyperactive" arm reflexes demonstrate "reflex abnormalities rather than absences . . . . indicating some effect on the spinal cord from discogenic pressure." (*Id.* at 196, 10: Ex. A.)

**3.**   The above-quoted Listing 1.05C represents the version in effect at the time the Commissioner's decision became final.  A revised Listing for herniated nucleus pulposus became effective February 19, 2002.  *See* 66

Fed.Reg. 58010 (Nov. 19, 2001).  According to the Commissioner,

> [w]ith respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.

*Id.* at 58011.

ant's demonstrated medical impairments in undertaking his step two analysis, he has committed an error of law. Congress has mandated the process by which the adjudicator is to determine medical severity:

In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).

In this case, however, the ALJ resolved affirmatively that Claimant suffers from severe impairments. Consequently, the ramifications of any erroneous failure to include Claimant's other impairments manifested themselves, if at all, in assessing her residual functional capacity and in evaluating the credibility of her testimony. Indeed, 20 C.F.R. § 416.945(e) guarantees that the adjudicator "will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity." *Accord* 20 C.F.R. § 404.1523. In addition, Social Security Ruling 96–8p (July 2, 1996) states that:

In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

SSR 96–8p. Accordingly, it is under this framework that we analyze Claimant's contentions.

Claimant asserts that, in addition to specifically rejecting Bowser's allegations of limiting headaches, hypertension, knee pain and depression, the ALJ completely ignored Bowser's record of thyroid problems and obesity.

■ Turning first to obesity, it is apparent that the ALJ never addressed Claimant's purported obesity because Claimant did not allege obesity in either of her benefits applications. Further, with the sole exception of Dr. Edington's observation that she appeared moderately obese, there is no diagnoses of obesity anywhere in the medical record. Nor is there any indication that she was told to lose weight or that her excess weight caused her afflictions or symptoms in the record. Furthermore, she did not raise the issue of obesity or attest to associated symptoms in her administrative hearing testimony. Nevertheless, Claimant argues that the treatment notes of Ronald Chambers, M.D., document her obesity in that if one independently calculates her body mass index based on the height and weights stated in the notes, the calculation yields a body mass index that falls within the clinically "obese" category.

The ALJ did not err in failing to account for the effects of a medical impairment— obesity—that Claimant never raised before the ALJ and is not readily apparent from the record.[4] To hold otherwise under

4. The situation presented here is easily distinguishable from that confronting the Court in

these circumstances would be tantamount to eviscerating Claimant's burden of showing the presence of a medically determinable impairment. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir.1996) (holding that claimant must submit sufficient evidence of impairment for a multiple impairment analysis to be required).

■ Next, contrary to Claimant's argument, the ALJ did acknowledge that Dr. Chambers treated the Claimant from September 30, 1996 through July 26, 1999 for, *inter alia*, hypothyroidism. It does not appear, however, that the ALJ explicitly addressed the interaction of this impairment with Bowser's other impairments in determining her residual functional capacity. Any such error is harmless because consideration of Claimant's hypothyroidism in conjunction with her remaining impairments would not have altered her residual functional capacity. Although Bowser has a documented history of hypothyroidism, she has not alleged that it causes any symptoms or limitations on her ability to work in any of her administrative filings. Significantly, the medical record reveals that her prescribed medication successfully controls the condition. Her left exophthalamos, caused by her thyroid condition, improved remarkably after Dr. Chambers increased her medication dosage. The record consistently notes no enlargement of the thyroid gland, and while Dr. Chambers' treatment notes reflect Bow-

ser's complaints of symptoms associated with knee and back pain, they do not mention any subjective complaints attributable to hypothyroidism. In short, the contention that Claimant's hypothyroidism exerts an impact on her residual functional capacity is unsustainable.

■ Regarding Claimant's alleged depression, Bowser challenges the ALJ's determination that her alleged depression does not constitute a medically determinable mental impairment which impacts her residual functional capacity. The ALJ properly found that Bowser's alleged depression did not constitute a medically determinable impairment. The ALJ cited numerous reasons in support of his decision not to credit Bowser's allegations of depression. Specifically, the ALJ noted that Claimant failed to seek treatment for depression, she was not referred to any mental health specialist, and the records of treating physician Gregory White, M.D., do not document any complaints of depression. Indeed, Dr. White's chart note dated June 12, 1998, indicated that she was alert, calm, and cheerful. She did not assert any mental complaints when evaluated by Dr. Edington. In addition, there is no record evidence of hospitalizations, she never alleged mental difficulties on her Disability Report, and she testified that "I've ben [sic] in a state of depression for a while there. I think I'm getting a little better now" (E.O.R. at 38). She also testified

*Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003). In that case, we held that the ALJ erred in not determining the effect of the claimant's obesity upon her other impairments and ability to work despite the claimant's failure to raise obesity as a disabling factor because

> [f]irst, it was raised implicitly in Celaya's report of symptoms. Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her report-

ed illnesses. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

*Id.* at 1182. It is cannot be disputed that the record in this case does not reveal an obesity of such magnitude as to put the ALJ on notice that he should further explore and consider the issue in his analysis. In addition, Claimant is not proceeding pro se.

that she no longer required Paxil. Finally, the ALJ observed that the record is devoid of evidence or testimony that she ever sought assistance from any other source for depression.

The claimant bears the burden of furnishing evidence of medically determinable impairments. *See* 20 C.F.R. § 404.1512(a). "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or physiological abnormalities ...." § 404.1529(b). The ALJ's reasons for rejecting Claimant's alleged depression are persuasive and supported by substantial evidence in the record. Claimant's argument that the ALJ inexplicably ignored Dr. Chambers' notes stating that "[s]he's been having a lot problems [sic] with depression and anxiety and was [prescribed] Paxil [sic]," (E.O.R. at 201), is unavailing in light of the ALJ's acknowledgment that Bowser was prescribed Paxil for depression, and his observations that she voluntary chose to stop taking it and that she reported that she was improving.

■ The ALJ similarly refused to credit and factor into his residual functional capacity analysis Claimant's allegations of headaches, high blood pressure, and arthritis of the knees. He cited the lack of evidence regarding treatment for headaches and knee pain, Claimant's testimony that she was not receiving any treatment for knee pain, the lack of evidence in Dr. Chambers' chart notes that her hypertension is uncontrolled or has resulted in damage, the lack of evidence of any hospitalizations or emergency room treatment for these complaints, and the state agency's failure to document any limitations resulting from these complaints.

These reasons are sufficiently specific and supported by substantial evidence in the record. Dr. Chambers has successfully brought Claimant's hypertension under control with prescribed medications. Unsurprisingly, the record thus reveals that Claimant has never alleged or complained of any specific symptoms or limitations stemming from her hypertension. Nor did she testify to any such symptoms or limitations at her administrative hearing. Similarly, Claimant's applications for benefits describe no restrictions, limitations, or complaints related to headaches. Although she did report to Dr. Edington that she "occasionally has a headache" (*id.* at 154), and complained once to Joseph Richey, M.D., she has not sought medical treatment for headaches, instead electing to take Tylenol as needed. She did not complain of headaches in her administrative hearing testimony. Finally, with respect to her knee problems, Bowser testified that "[w]alking, ... is getting difficult with my knees," (*id.* at 36), and that she has "a lot of pain getting, getting up" (*id.* at 39). Significantly, this testimony does not comport with what she described to the state agency examiner. Upon being asked about her knee pain and its ramifications, Claimant responded that she is able to walk a block and then must rest before continuing on, and further stated that the "only" difficulty caused by her knee pain is that she "sometimes" needs her arms to lift herself out of a chair. (*Id.* at 184.) Also, her knees have never been x-rayed. Although she explained in her administrative hearing testimony that she did not have money to see a specialist, she also admitted that over-the-counter medications relieve some of the pain. Based on this record, the ALJ rationally discounted Bowser's knee ailments and pertinent pain testimony.

The ALJ's decisions to exclude Claimant's asserted obesity, hypothyroidism, hypertension, headaches, and knee pain from

his sequential evaluation assessment do not constitute reversible error and are supported by substantial evidence in the record.

### C. *The ALJ properly rejected the opinion of Claimant's physical therapist.*

■ Claimant's counsel employed Jim Girt, a physical therapist, to conduct a functional evaluation in June 1999. He found that Claimant could sit three to four hours, stand one to two hours, and walk less than one hour. In addition, he determined her hand/finger dexterity to be marginally functional, and concluded that it did not appear that she could perform sedentary labor for a long enough period to be productive.

The ALJ accorded no significant weight to the functional limitations detailed in Mr. Girt's report because

> they are inconsistent with the State Agency determinations ...; they are inconsistent with the limitations expressed by Dr. Edington; and such evidence from other sources (see 20 CFR 404.1513(e)) cannot be given the same weight as from acceptable medical sources. Mr. Girt, who routinely provides reports for claimants' representatives has found limits in walking, standing and sitting without regard to the fact that this particular claimant has neck and arm pain rather than pain in areas likely to affect a person's ability to walk, sit or stand. He is not a credible source.

(E.O.R. at 17.)

Bowser's challenge to the ALJ's rejection of Mr. Girt's opinion is unpersuasive.

Girt is not an "acceptable medical source[ ]" under 20 C.F.R. § 404.1513(a). Rather, he is an "other source[ ]" that the ALJ may consider pursuant to 20 C.F.R. § 404.1513(d). The ALJ is free to reject the testimony of an "other source[ ]" by furnishing reasons germane to that particular witness. *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993).

Here, the ALJ noted that Mr. Girt's assessments are inconsistent with the testimony of Bowser's other medical sources. Lay testimony may be discounted if it conflicts with the medical evidence. *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984). The ALJ's observation is supported by substantial evidence in the record. Indeed, not only do Mr. Girt's assessments conflict with those of Dr. Edington and the state agency reviewers, they contradict the testimony provided by Bowser at her administrative hearing. Whereas Mr. Girt opined that Claimant could sit for no longer than one hour continuously, stand for no longer than thirty minutes continuously, and walk no longer than fifteen minutes continuously, she testified that she could stand for one hour continuously and walk for thirty minutes continuously. Moreover, although Mr. Girt indicated in his report that Claimant reported laying down three hours per day, she testified before the ALJ that on a "bad" day she lays down twice for one hour.

In addition, although we recognize that the purpose for which a medical report or opinion is rendered is not ordinarily a legitimate basis for evaluating its reliability, evidence of the circumstances under which the report was obtained and its consistency with the remainder of the record can constitute an acceptable basis for assessing its reliability. *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir.1998). Here, the record shows that Claimant's counsel solicited the opinion of Mr. Girt, a non-medical source who reached conclusions that differed significantly from both Claimant's testimony and the acceptable medical sources.

The ALJ did not commit legal error by rejecting Mr. Girt's report.

D. *The ALJ did not commit reversible error in rejecting Claimant's subjective complaints of pain and fatigue.*[5]

■ The ALJ determined that Bowser's neck and right upper extremity complaints were only partially credible. In reaching this conclusion, he relied on her administrative hearing testimony that she takes "over the counter" medication which provides some pain relief, and the improvement in her right upper extremity impairments as documented by Dr. White's records. The ALJ also observed the lack of evidence of surgery on her right upper extremity, the lack . of any chiropractic treatment or pain injections or treatment at a pain clinic, and Bowser's failure to receive any physical therapy since 1998. In addition, X-rays of Claimant's right shoulder in July 1998 revealed only mild degenerative change, and Dr. Edington characterized her right upper extremity and upper torso pain as frequent slight/moderate pain. The ALJ credited Claimant's testimony regarding her limited ability to look down at a work surface.

Because there is no affirmative evidence of malingering in this case, the Commissioner's reasons for rejecting Bowser's testimony must be clear and convincing. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004). Once evidence of an underlying medical impairment is introduced, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 345, 348 (9th Cir. 1991) (en banc); *see also* SSR 96–7p, 61 Fed.Reg. 34483, 34484 (July 2, 1996) ("An

individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). In addition, the ALJ "must state specifically *which* symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996) (emphasis added); *accord Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). This assures the reviewing court that the ALJ did not arbitrarily dismiss the claimant's testimony. *Bunnell*, 947 F.2d at 345–46.

Factors that the adjudicator may consider in determining whether the claimant's testimony regarding the severity of her symptoms is credible include the claimant's daily activities, inconsistencies in testimony, effectiveness of pain medication, unexplained or inadequately explained failure to seek treatment, and ordinary techniques of credibility evaluation. *See Smolen*, 80 F.3d at 1284; *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.1995).

The ALJ supported the finding that Bowser's testimony regarding the pain she experiences in her upper extremities is only "partially credible" with clear and convincing reasons that are supported by substantial evidence in the record. In addition to referencing the objective medical evidence documenting the improvements in Claimant's right upper extremity, he reasonably highlighted Claimant's use of over-the-counter medications and heat and ice to alleviate pain, *see Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995) (noting that conservative treatment suggested

---

**5.** Bowser's administrative hearing testimony on her other impairments is discussed in connection with our analysis contained in part III.B. Also, Claimant's Brief emphasizes the ALJ's purported failure to credit her symp-

toms of fatigue and the swelling she experiences in her hands and fingers. A review of the administrative hearing record reveals, however, that there is no testimony to this effect.

lower level of pain than asserted), and noted that even over-the-counter medications provide some pain relief. He further legitimately noted Claimant's failure to seek treatment, including chiropractic treatment, physical therapy, or pain injections. He specifically identified those portions of her testimony that he credited, and provided appropriate reasons substantiated by evidence to reject other portions.

The ALJ's reasons for his credibility determination were clear and convincing, sufficiently specific, and supported by substantial evidence in the record. That the evidence, when viewed in the totality, may rationally support a different conclusion is of no moment. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir.1999).

E. *The ALJ did not err by adopting the opinions of two workers' compensation examiners and the opinion of a state agency reviewer regarding Claimant's residual functional capacity.*

■ In assessing Claimant's residual functional capacity, the ALJ adopted the state agency reviewers' determinations, as well as the upper extremity limitations identified in Dr. White's chart notes, the opinion of Dr. Edington, and Claimant's testimony regarding her limited ability to look down at a work surface. The ALJ acknowledged, but refused to afford weight to Dr. White's opinion of May 22, 1998, that Bowser could not perform prolonged bending, stooping, walking standing, climbing, kneeling or squatting because those limitations "were not consistent with the evidence of record and no such limitations were identified by Dr. Edington." (E.O.R. at 21.)

In support of her argument that the ALJ's adaptation of the limitations found by the workers' compensation doctors in lieu of Dr. Howland's findings is unsupported by substantial evidence, Claimant points out that Drs. Edington and White evaluated and treated her for her workers' compensation claim. As such, their analyses are primarily focused on Bowser's work-related impairments, and not her chronic health problems. Claimant argues that there is no indication that the ALJ adequately considered the distinctions between the workers' compensation standards employed by Drs. Edington and White and the Social Security standards. In addition, Claimant asserts that the ALJ failed to account for the inconsistencies between his hypothetical and the state agency physicians' opinions, and between the agency physicians' opinions and the workers' compensation doctors, and finally between the state agency physicians' opinions themselves.

The Social Security Regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant ("treating physician"); (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat the claimant, but review the claimant's medical records ("non-examining physician" or "reviewer"). *See* 20 C.F.R. § 404.1527(d). Ordinarily more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). The ALJ may disregard the treating or examining physician's opinion, however, whether or not that opinion is contradicted. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The controverted opinion of a treating or examining physician may be rejected in favor of the opinion of a reviewing physician for

specific and legitimate reasons supported by substantial evidence in the record. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995). The opinion of a non-examining doctor cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician. *Lester,* 81 F.3d at 831. The rejection of the opinion of an examining or treating physician may, however, be based in *part* on the testimony of a nontreating, non-examining medical advisor, when consistent with other independent evidence in the record. *Morgan v. Apfel,* 169 F.3d 595, 602 (9th Cir.1999) (emphasis added). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes,* 881 F.2d at 751 (internal quotation marks omitted).

The terms employed in workers' compensation disability rating are not equivalent to Social Security disability terminology. *See Desrosiers v. Sec. of Health & Human Services,* 846 F.2d 573, 576 (9th Cir.1988). Notwithstanding the variations in the rating schemes, however, the ALJ may not ignore a doctor's medical opinion merely because it was issued in a workers' compensation context. *See Coria v. Heckler,* 750 F.2d 245, 247–48 (3d Cir.1984) (holding that ALJ erred in failing to consider medical reports submitted in state workers' compensation proceeding). Instead, the objective medical findings contained in such opinions are to be evaluated as any other medical opinion. *Id.* The ALJ's opinion should reflect, however, that the ALJ properly considered the pertinent distinctions between the two schemes. *See Desrosiers,* 846 F.2d at 576 ("It is clear from the record that the ALJ did not adequately consider this [categories of work under social security disability scheme versus workers' compensation scheme] distinction.").

In analyzing medical reports using workers' compensation standards, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'" *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir.1996) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982)); *see id.* at 543–44 (holding that the ALJ reasonably inferred that a worker who had "lost approximately half of his pre-injury capacity for lifting, bending and stooping" under the California workers' compensation guidelines, and whose prior job required lifting forty pounds occasionally, twenty-five pounds frequently, and constant bending, could perform light work under the Commissioner's regulations).[6]

In this case, although the ALJ did not explicitly translate Dr. White's and Dr. Edington's findings into Social Security parlance, his reasoning can be gleaned from his opinion. First, however, it must be noted that, contrary to Claimant's representations, the ALJ primarily adopted the limitations as found by the state agency reviewers, Mohammed Mehrkhast, M.D., and Fred Stargardter, M.D., and not

---

**6.** *See also Carpenter v. Apfel,* No. 98–4891, 2000 WL 973681, at *3–*4 (N.D.Cal. July 5, 2000) (holding that examining physician's opinion that the claimant had "lost some capacity for lifting and bending, and was precluded from any heavy lifting" under the California workers' compensation guidelines supported the ALJ's finding that the claimant could perform light work); *Payan v. Chater,* 959 F.Supp. 1197, 1203 (C.D.Cal.1996) (holding that the ALJ properly found that a claimant who was precluded from "heavy lifting" under the workers' compensation guidelines, and whose past work required lifting one hundred pounds occasionally and fifty pounds frequently, walking and standing for eight hours per day, and constant bending and reaching, could perform medium work as defined by the Commissioner).

those of the workers' compensation doctors. It was proper to adopt the state medical experts' residual functional capacity assessments in this case as they are "not contradicted by *all other evidence* in the record," *Magallanes*, 881 F.2d at 752 (emphasis in original), are "consistent with other evidence," *id.*, and do not constitute the sole evidence on which the Commissioner relied in rejecting the treating or examining doctors' opinions, *see id.*; SSR 96–8p.

The ALJ found that Bowser retains the capacity to: (1) lift twenty pounds occasionally; (2) lift ten pounds frequently; and (3) push and pull at the light exertional level. In addition, he concluded that she cannot perform repetitive twisting or torque-like motions, forceful grasping and gripping, and forceful pushing or pulling with her right arm. Finally, she cannot look down at a work surface for prolonged periods. The ALJ explicitly refused to impose any limitations based on ability to sit, stand, or walk.

The limitations instituted by Dr. Edington and Dr. White buttress those of the state agency examiners and consequently those ultimately found by the ALJ. The workers' compensation and Social Security standards operate as different paradigms. Dr. White's activity modifications are framed as what Claimant should *not* do, as opposed to the Commissioner's concern of what her "capacity" is.[7] The logical consequence of this variance is that the residual functional capacity for Social Security purposes is presumably a lower level of activity. Consistent with this observation, the ALJ in this case assessed Claimant's residual functional capacity at less stringent levels than prescribed by Dr. White. Dr. White restricted Claimant to lifting, push-

ing, pulling, and carrying no greater than twenty pounds frequently or repetitively or at any one time. The ALJ's limitations regarding lifting, pushing, and pulling are, as expected, less demanding than Dr. White's. In addition, the pushing and pulling limitations found by Dr. Edington and Dr. White are consistent with the review and added limitation of state agency examiner Dr. Stargardter, who found Bowser unable to perform pushing and pulling over prolonged periods with her right arm.

To the extent that there are inconsistencies between the various doctors' opinions, the ALJ resolved them appropriately. It is the ALJ's responsibility to determine credibility and resolve conflicts and ambiguities in the medical and non-medical evidence; when the evidence is susceptible to more than one rational interpretation, and one is provided, the ALJ's conclusion must be upheld. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997). The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753–754. Regarding Bowser's gripping and twisting abilities, the ALJ found that she cannot perform repetitive twisting or torque-like motions, as well as forceful grasping and gripping, despite that no such limitations were assessed by state agency reviewer Dr. Mehrkhast. These limitations are, however, consistent with the findings of grip weakness and restrictions imposed by three other doctors—Drs. White, Edington, and even Dr. Howland. Moreover, the ALJ appropriately rejected limitations on sitting, walking, and standing. Although such limitations were implemented by Dr. White, they were rejected entirely by Drs. Mehrkhast and Stargardter. Buttressing

---

7. Pursuant to 20 C.F.R. § 404.1545(a)(1), the Commissioner must consider "the most you

can still do despite your limitations."

this finding is the ALJ's legitimate rejection of Bowser's allegations regarding the severity of her knee pain. Finally, although Claimant makes much of the ALJ's purported failure to credit or incorporate the functional limitations found by Dr. Howland, she fails to specify which limitations and findings she believes were improperly rejected.

The state agency physicians' opinions are consistent with other evidence of record, constitute substantial evidence, and did not alone support the rejection of Dr. White's opinion regarding Claimant's postural limitations. *See id.* at 752.

Accordingly, the ALJ's assessment of Claimant's functional limitations is free of legal error and supported by substantial evidence.

F. *The ALJ properly concluded that there exists unskilled jobs in the national economy that a person with Claimant's limitations can perform.*

■ Once a claimant proves that she is unable to perform her past relevant work, the burden shifts to the Commissioner to show that, given the claimant's residual functional capacity and age, education, and work experience, an adjustment can be made to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c). To meet this burden, the ALJ may propound hypothetical questions to the vocational expert that "set out all of the claimant's impairments" for the vocational expert's consideration. *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir.1999) (internal quotation marks omitted).

In this case, the ALJ found that Claimant retains the residual functional capacity to

lift 20 pounds occasionally and 10 pounds frequently and to push and pull at the light exertional level. She has no impairment based limits on her ability to sit, stand or walk. She cannot look down at a work surface for prolonged periods. With her right (dominant) arm, she cannot perform repetitive twisting or torque like motions, forceful grasping and gripping, or forceful pushing and pulling.

(E.O.R. at 19.)

In doing so, he properly adopted the opinions of the state agency reviewers, the "upper extremity limitations identified in Dr. White's chart notes," the "opinion of Dr. Edington," and Claimant's "testimony regarding her limited ability to look down at a work surface," (*id.*), as described above. He concurred with the vocational expert's opinion that an individual possessing the residual functional capacity detailed above could function as a flagger, cashier, and school bus monitor. Each of these jobs are performed at the light exertional level, and exist in significant numbers in the national economy.

The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. *See* SSR 96–8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. *Id.*

SSR 96–8p provides a blueprint for what an RFC assessment must contain in all cases in which symptoms are alleged: (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; (2) a resolution of any inconsistencies in the evidence as a whole; and (3) a logical expla-

nation of the effects of symptoms, including pain, on the individual's ability to work.

As thoroughly explained in the preceding discussion, the ALJ's findings regarding Claimant's limitations were free of legal error and supported by substantial evidence. Accordingly, the hypothetical posed to the vocational expert in this case adequately reflected Claimant's residual functional capacity, and the vocational expert properly found Claimant capable of performing alternative light, unskilled work as a flagger, cashier, and school bus monitor. In his decision, the ALJ noted that each of these jobs are "performed at the light exertional level," and that "each accommodates the particular limits of the hypothetical. All of the jobs have an SVP of 2, which is equal in complexity to [Claimant's] past relevant work." (E.O.R. at 20.) Specifically, the vocational expert testified that the "limitations on use of the right upper extremity" did not preclude the "frequent reaching and handling" required by the flagger job, and that the restrictions regarding "repetitive twisting or torque like motions" and "forceful grasping" did not preclude performance of the cashier job. (*Id.* at 42–43.)

The ALJ met his burden in concluding that there exists unskilled jobs in the national economy that a person with Claimant's limitations can perform.

### IV.

For the foregoing reasons, we affirm the District Court.

AFFIRMED